UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINGER STENSON,<br><br>             Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br><br>             Defendant. | Case No. 11CV1054-BEN (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF Nos. 17 & 18] |

Plaintiff Ginger Stenson brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 17, "Pl.'s Mot.") and Defendant's Cross-Motion for Summary Judgment (ECF Nos. 18, "Def.'s Mot."). Plaintiff did not file an opposition or reply.

This Report and Recommendation is submitted to United States District Judge Roger T. Benitez pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

///

///

## PROCEDURAL BACKGROUND

On January 8, 2008, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning July 1, 2007. See Administrative Record ("AR") at 18. On January 25, 2008, Plaintiff filed an application for SSI. Id. The claims were initially denied on June 4, 2008, and again upon reconsideration on July 17, 2008, resulting in Plaintiff's request for an administrative hearing on July 19, 2008. Id.

On December 2, 2009, a hearing was held before Administrative Law Judge ("ALJ") Eve B. Godfrey. Id. Plaintiff, an impartial medical expert (Alfred G. Jonas, M.D.), and an impartial vocational expert (Alan E. Cummings, Ph. D.) testified at the hearing. Id. In a written decision dated December 23, 2009, ALJ Godfrey determined that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act. Id. at 26. Plaintiff requested review by the Appeals Council. Id. at. 1. In a letter dated March 14, 2011, the Appeals Council found no basis for reviewing the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id.

On May 13, 2011, Plaintiff filed the instant action seeking judicial review by the federal district court. See ECF No. 1. On October 27, 2011, Plaintiff filed a motion for summary judgment alleging a single error: that the ALJ improperly excluded a moderate limitation from the residual functional capacity ("RFC") determination. See Pl.'s Mot. Defendant filed a cross-motion for summary judgment on November 30, 2011. See Def.'s Mot. Plaintiff did not file an opposition or reply.

## FACTUAL BACKGROUND

Plaintiff was born on February 10, 1972 and was thirty-five years old at the time of the ALJ's decision. See AR at 25. She testified that she completed the eighth grade after four years[1] and that she never received her General Education Development ("GED"). Id. at 79-80. Prior to

---

[1] Plaintiff testified that she spent four years in the eighth grade and that the eighth grade was the last grade she attended in school. Id. at 79. A Disability Report - Adult form completed by Plaintiff, however, states that she completed the eleventh grade in June 1989. Id. at 209.

Plaintiff's alleged onset of disability, she worked: (1) in data entry[2]; (2) as a cashier for Value Village, Wal-Mart, and Target; (3) as a salesperson and cashier at JC Penney; (4) as a parts driver for Genuine Parts Company; and (5) for Best Cleaning Janitorial Services. Id. at 73-79. As a data enterer, Plaintiff assisted the accountants at her company with filing, timekeeping, data entry, and envelope stuffing. Id. at 73-74. As a cashier, Plaintiff had the option of sitting or standing while assisting customers and as a salesperson, Plaintiff assisted customers in finding the desired merchandise. Id. at 75-78. Plaintiff currently lives with four of her seven children, who range in age from twenty years old to two years old. Id. at 62. Plaintiff supports herself and her children with Aid to Families with Dependent Children ("AFDC"). Id. at 69.

On December 2, 2009, Plaintiff, represented by counsel, appeared at her hearing before the ALJ. Id. at 35. During the hearing, the ALJ questioned Plaintiff regarding her history of drug use and domestic violence, work experience, and alleged disability. Id. at 66-79. When questioned about whether or not she could do something like file or stuff envelopes for eight hours a day, five days a week, Plaintiff testified that "there's times when I feel like I could do that." Id. at 65. Plaintiff further explained by testifying that on good days she could do that, but not on bad days. Id. On bad days, Plaintiff stated that "it's hard to get up. It's hard to like brush my hair. It's hard." Id. If she is having a bad day, her older children walk to school since it is only one block away and she takes the two-year-old child to daycare or asks her twenty-year-old child to come help care for the two-year-old. Id. at 66. Plaintiff testified that the bad days occur about two to three times a week. Id.

During her testimony, Plaintiff did not provide many details about her current physical or mental abilities, but did state that the only side effect from her medication is that she gets drowsy. Id. at 59-60. Plaintiff also testified that she takes a nap once a day and that she takes her youngest to daycare because she needs to be alone sometimes. Id. at 61. Plaintiff explained that she needs to be alone sometimes because "sometimes things are hard. I just need to be alone." Id. When she finds herself alone, Plaintiff usually just lies down. Id.

---

[2] The records indicate that Plaintiff was an accountant, but her testimony indicated that data entry is a more appropriate description of her job duties. AR at 80.

The Administrative Record contains Plaintiff's medical records dating back to October 2007. Id. at 398. The medical records include progress notes from Plaintiff's treating psychiatrist, Dr. Michael Torrente. Id. at 23, 247-256, 469-474. Dr. Torrente opined that Plaintiff had bipolar disorder, ADHD and hypothyroidism combined with marked to extreme limitations in her daily living activities, ability to maintain social functions, concentration, persistence or pace, and that Plaintiff's limitations would cause her to miss work three or more days a week. Id. at 469 & 473. The AR also includes a Case Analysis, Psychiatric Review Technique, and Mental Residual Functional Capacity Assessment dated March 11, 2008 prepared by Dr. Gina M. Rivera-Miya, a state psychological consultant. Id. at 257-272. Finally, the AR contains several documents from Plaintiff's treating psychologist, Dr. Vanja Gale, who treated Plaintiff for approximately four months in late 2008 and early 2009. Id. at 23 & 441-468.

## THE ALJ'S DECISION

On December 23, 2009, the ALJ issued a written decision in which she determined that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act because while Plaintiff is unable to perform any past relevant work ("PRW"), she is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 26. In reaching this decision, the ALJ followed the required five-step sequential evaluation process. Id. at 18-26. Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 1, 2007, the alleged disability onset date. Id. at 20. She then considered all of Plaintiff's medical impairments and determined that Plaintiff's anxiety disorder was a "severe" impairment as defined in the Regulations. Id. at 20. At step three, the ALJ found that Plaintiff's impairment did not meet or medically equal the listed impairments. Id. at 21.

At step four, the ALJ considered Plaintiff's severe impairment and determined that her RFC, which the ALJ described as the "capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled work in a nonpublic work environment with little contact with others and no work around heights or hazards," did not permit Plaintiff to perform any of her PRW. Id. at 22-25. In reaching this decision, the ALJ discounted Plaintiff's subjective claims concerning the intensity, persistence and limiting effects of her symptoms. Id.

at 22.  The ALJ's reasons for discounting Plaintiff's credibility regarding her symptoms included: (1) the weight of the evidence does not support Plaintiff's claims of disabling limitations to the degree alleged; (2) Plaintiff's doctors have not opined that she is totally and permanently disabled from any kind of work; (3) Plaintiff does not suffer from debilitating side effects from her medication; (4) Plaintiff has an active life that includes taking care of four children under the age of fourteen; (5) Plaintiff testified to having visual hallucinations, but the record indicates otherwise; (6) Plaintiff told her treating psychologist that she was happy and doing better; and (7) Plaintiff has a history of methamphetamine use.  Id. at 22-23.

The ALJ also rejected the opinion of Plaintiff's treating psychiatrist, Dr. Torrente.  Id. at 23.  In doing so, the ALJ noted that Dr. Torrente's conclusions were not supported in the record and that there were inconsistencies in his progress notes.  Id. at 23-24.  The ALJ further noted that most of Dr. Torrente's opinions are "contained in fill-in-the-blank forms" and unsupported by objective observations.  Id. at 24.  The ALJ gave great weight to the opinion of Dr. Alfred Jonas, the medical expert who testified at the hearing and "opined that the evidence of the claimant's mental disorder was minimal," that Plaintiff does not suffer from a diagnosable psychiatric condition according to Social Security standards, and that there are no meaningful restrictions or limitations.  Id. at 24 & 39.  The ALJ also assigned significant weight to the opinions of the state agency medical consultant, Dr. Gina Rivera-Miya.  Id. at 25.

At the fifth and final step, the ALJ considered Plaintiff's age, education, work experience and RFC and determined that "there are jobs that exist in significant numbers in the national economy that …[Plaintiff] can perform."  Id. at 25.

## APPLICABLE LAW

### A.   Standard of Review

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir.2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir.2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.1998) (citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. Batson, 350 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

**B.     Vocational Expert Hypotheticals**

An ALJ posing a hypothetical question to a vocational expert ("VE") "must set out all the limitations and restrictions of a particular claimant." Salerno v. Astrue, 266 Fed. Appx. 570, 573 (9th Cir.2008) (quoting Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir.1989)). If the assumptions in the hypothetical are not supported by the record, or do not reflect all of the claimant's limitations, the VE's testimony cannot support a finding that the claimant could perform jobs in the national economy. Id. However, the ALJ need only include in the hypothetical those limitations that the ALJ finds credible and that are supported by substantial evidence in the record. Osenbrook v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir.2001). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported

by substantial evidence in the record as a whole. Id. at 1163 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir.1995)).

## DISCUSSION

Plaintiff argues that the ALJ erroneously denied her claim for disability benefits by failing to include the "'Adaptation' limitation of a moderate limitation in the ability to respond to changes in a routine work setting" in the hypothetical that was presented to the VE without providing any reasons for rejecting it. Pl.'s Mot at 4. Plaintiff asks this Court to "reverse the decision of the Commissioner and remand for further proceedings." Id. at 6. Defendant counters that the ALJ's decision was supported by substantial evidence. Def.'s Mot. at 5. Defendant contends that Plaintiff misreads the medical evidence and that the ALJ properly interpreted Dr. Rivera-Miya's opinion. Id. at 6-7. Defendant concludes that the ALJ's decision should be affirmed. Id. at 7.

### A.     The ALJ's Residual Functional Capacity Assessment & Hypotheticals

The ALJ concluded that Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled work in a nonpublic work environment with little contact with others and no work around heights or hazards." Id. at 22. In reaching this decision, the ALJ noted that: (1) she did not find Plaintiff's symptom testimony to be credible; (2) she did not find the opinions of Plaintiff's treating doctor, Dr. Torrente, to be supported in the record; and (3) she assigned significant weight to the opinion of the medical expert, Dr. Jonas, and the state agency medical consultant, Dr. Rivera-Miya[3]. Id. at 22-25.

In support of her decision to give great weight to Dr. Jonas's opinion, the ALJ explained that Dr. Jonas testified that there was minimal evidence of Plaintiff's mental disorder and that "perhaps she had an anxiety disorder." Id. at 24. Dr. Jonas concluded that Dr. Torrente's opinions were inconsistent and not supported in the record. Id. at 24 & 40. Specifically, Dr. Jonas opined that Dr. Torrente's diagnosis of psychosis for Plaintiff was unsupported. Id. at 24 & 49-52.

Prior to assigning great weight to Dr. Rivera-Miya's opinions, the ALJ specifically mentioned

---

[3]Plaintiff only challenges the hypothetical that was presented to the VE. She does not challenge the ALJ's credibility determination or rejection of her treating doctor's conclusions.

two of Dr. Rivera-Miya's reports dated March 11, 2008, which were prepared for this case. Id. at 24. In the first report, Dr. Rivera-Miya found that Plaintiff had a medically determinable affective disorder and that Plaintiff was mildly limited in activities of daily living, was moderately limited in maintaining social functioning and had moderate difficulties maintaining concentration and persistence or pace, but had not had any periods of decompensation. Id. In the second report, Dr. Rivera-Miya found that Plaintiff was "moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting." Id. In a third report not specifically mentioned by the ALJ, Dr. Rivera-Miya opined that Plaintiff had no significant functional limitations and that the evidence did not support "ongoing significant psych limitations." Id. at 272. Dr. Rivera-Miya concluded that Plaintiff "is able to sustain at simple, nonpublic tasks." Id.

After considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Id. at 25. The ALJ stated that she based this decision on the testimony of the VE in response to the hypotheticals that she posed. Id. at 26. First, the ALJ presented the VE with a hypothetical that contained numerous limitations[4] and asked the VE if such a person would be able to sustain full-time work with continuity. Id. at 80-81. The VE testified that he did not "believe that such a person would be able to sustain full-time work with continuity." Id. at 81.

---

[4]The hypothetical envisioned a person: (1) whose ability to understand and remember detailed instructions, ability to travel in unfamiliar places, ability to remember work-like procedures, and ability to interact with the general public was seriously limited but not precluded; (2) whose ability to carry out detailed instructions, maintain attention for a two-hour segment of time, set realistic goals, maintain regular attendance and be punctual within customary usually strict tolerances, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with peers or co-workers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, set realistic goals or make plans independently of others, and deal with the stress of semi-skilled and skilled work was unable to meet competitive standards; (3) whose ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness was somewhere between unable to meet competitive standards and no useful ability to function; and (4) who was limited but satisfactory in their use of personal transportation, their ability to understand, remember, and carry out very short and simple instructions, their ability to ask simple questions or request assistance and make simple work-related decisions.

The VE stated that this was especially true "given all the areas indicated as unable to meet competitive standards." Id. at 82. The ALJ then presented the VE with a second and final hypothetical. Id. at 82. This hypothetical envisioned an individual with no physical or exertional limitations who has to work in a nonpublic environment doing unskilled work with limited contact with others. Id. at 82. The VE found that this person would not be able to do any of Plaintiff's PRW, but that there are other jobs for such an individual, including being a dishwasher, cleaner, or hand packager. Id.[5] Plaintiff's attorney then asked the VE if a person would be able to sustain employment at the three positions described if they "missed four days per month, which is one day a week, which is the equivalent of the Claimant's testimony here today," to which the VE testified "no, not if that was occurring on an ongoing basis. That would be beyond most employers' tolerance." Id. at 83. The VE also testified that Plaintiff could perform all three jobs even if she was precluded from operating heavy machinery and heights. Id.

In determining that Plaintiff was not disabled, the ALJ relied on the VE's testimony, based on the second hypothetical, that Plaintiff could perform jobs in the national economy. Id. at 26. Plaintiff argues that this conclusion is improper because the hypothetical does not include the "moderate limitation in the ability to respond to changes in a routine work setting" found to be true by Dr. Rivera-Miya and because the ALJ does not provide a reason for eliminating the limitation. Pl.'s Mot. at 4. Defendant argues that this limitation was actually a "summary conclusion" and that Dr. Rivera-Miya considered it when she reached her final "functional capacity assessment" set forth in the Case Analysis report, that Plaintiff is able to perform "simple nonpublic tasks." Def's Mot. at 6-7 (referencing AR at 268-272).

The ALJ did not err by omitting the adaptation limitation from the hypothetical presented to the VE because the hypothetical accurately set forth Plaintiff's RFC. While the ALJ's hypothetical did not describe Plaintiff's limitation of the ability to respond appropriately to changes in the workplace verbatim, it did reflect the "practical ramifications" of the limitation and encompassed the "concrete consequences" of the limitation. Salazar v. Astrue, 2008 WL

---

[5] See also Lovan v. Astrue, 2011 WL 3648274, *20 (E.D.Mo. July 6,2011) (noting that the VE testified that a person who was limited to jobs that have only occasional changes in work setting would not be precluded from jobs such as housekeeping/cleaner, hand packaging, and mailroom clerk as such jobs "typically did not involve a lot of change" in the work setting).

4370056, *6 (C.D.Cal. Sept. 23, 2008) (stating that while "the hypothetical did not explicitly and separately note the fifth moderate limitation found by Dr. Hurwitz-namely, as to Plaintiff's ability to set realistic goals or make plans independently of others-the limitation to simple, repetitive tasks would seem to reflect the 'practical ramification' of this limitation") (citing Roe v. Chater, 92 F.3d 672, 676-77 (8th Cir.1996) (stating that while the hypothetical posed to the VE did not use the specific wording of the "concentration, persistence, or pace" limitation the ALJ had found, the hypothetical's wording did encompass the "concrete consequences" and "practical ramifications" of this limitation, and thus, the hypothetical sufficiently presented the claimant's limitations to the VE)). Similarly, here, the limitations of "simple nonpublic tasks" and work performed with "limited contact with others" necessarily include Plaintiff's limited ability "to respond to changes in a routine work setting."

Additionally, the ALJ's RFC assessment and hypothetical and Dr. Rivera-Miya's conclusions are not mutually exclusive. The ALJ could adopt Dr. Rivera-Miya's conclusions in the Case Analysis that the "evidence does not support ongoing significant psych limitations" and that Plaintiff is "able to sustain at simple, nonpublic tasks" without rejecting Dr. Rivera-Miya's opinion that Plaintiff has a limitation of her ability to respond appropriately to change. The moderate limitation is not disabling or a "significant psych limitation" and, therefore, does not contradict Dr. Rivera-Miya's conclusion. See Arriola v. Astrue, 2008 WL 4926961, at *4 (C.D.Cal. Nov.14, 2008) (noting that ALJ's definition of the term "moderate" was consistent with 2006 edition of SSA Form HA-1152, which defines moderate limitation as follows: "There is more than a slight limitation in this area but the individual is still able to function satisfactorily.").

**B.     Harmless Error**

Even if the ALJ had erred by failing to include the adaptation limitation in the hypothetical posed to the VE, the error would have been harmless. See Salinas v. Astrue, 2008 WL 3540248, * 2 (C.D.Cal., Aug. 28, 2008) (stating that "the question of whether the ALJ included all of a claimant's limitations in a hypothetical is subject to harmless error analysis") (citing Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir.1993)). Harmless error only occurs if the error is inconsequential to the ultimate nondisability determination. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.2006); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56

(9th Cir.2006). Errors that do not affect the ultimate result are harmless. See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir.2007).

In Mclain, a state-agency physician, reviewed the medical evidence in plaintiff's file and completed a Mental Residual Functional Capacity Assessment form. McLain v. Astrue, 2011 WL 2174895 (C.D.Cal., June 3, 2011). Throughout the form, the physician checked boxes which reflected that, among other things, plaintiff had moderate limitations in social functioning, specifically the ability to accept instructions and respond appropriately to criticism from supervisors, and moderate limitations in the ability to adapt (i.e., respond appropriately to changes in the work setting). Id. at 4. In the functional capacity assessment section of the form, the doctor opined that plaintiff retained adequate function to do simple, repetitive tasks. Id. Plaintiff contended that the ALJ, who relied on the grids instead of a vocational expert, erred by failing to mention the doctor's opinions regarding her moderate limitations in social functioning and the ability to adapt. Id. at 5.

The court disagreed and found that "simply because the ALJ did not individually reference each of the moderate mental limitations expressed in the November 15 form does not mean he failed to consider such evidence." Id. at 5 (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered")). The ALJ was not required to discuss every piece of evidence in the record and the court noted that the ALJ properly accounted for the limitations reflected in the Assessment by adopting the state-agency psychiatrist's overall opinion that plaintiff retained adequate function to do simple repetitive tasks. Id. The court stated that the ALJ "was entitled to rely on the doctor's narrative interpretation of her findings, rather than the underlying, check-the-box summary conclusions, and resolve any ambiguity between the two." Id. (citing Lewis, 236 F.3d at 509 (ALJ resolves conflicts and ambiguities in the evidence)); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). Id.

Finally, the court noted that even if the ALJ had erred, any such error was harmless because "moderate mental functional limitations—specifically limitations in social functioning and adaptation—are not per se disabling, nor do they preclude the performance of jobs that involve

simple, repetitive tasks." Id. at 6 (citing Rogers v. Comm'r of Soc. Sec., 2011 WL 445047, at *11–*12 (E.D.Cal. Jan.25, 2011) (residual functional capacity assessment that limits claimant to simple, repetitive tasks adequately accounts for moderate limitations in social functioning)); and (Koehler v. Astrue, 283 Fed. Appx. 443, 445 (9th Cir.2008) (ALJ's finding that claimant lacked a "severe" mental impairment was proper even though claimant had "moderate" limitation in the "ability to respond to changes in the workplace setting")). Because the ALJ's residual functional capacity assessment included a limitation to simple, repetitive tasks[6], the addition of moderate limitations on social functioning and adaptation would not have changed the ALJ's ultimate nondisability determination. Id.

Similarly, in the instant matter, Dr. Rivera-Miya, a state agency physician, completed a Mental Residual Functional Capacity Assessment form, checked boxes that reflected that Plaintiff had moderate limitations in her ability to respond to change, and opined (albeit in a separate Case Analysis form, not in the functional capacity assessment Section of the Mental Residual Functional Capacity Assessment form) that Plaintiff is able to "sustain at simple, nonpublic tasks." AR at 268-272. As in Mclain, the ALJ properly accounted for the limitation regarding change by adopting Dr. Rivera-Miya's overall opinion that Plaintiff could perform simple, nonpublic tasks. The ALJ was "entitled to rely on the doctor's narrative interpretation of her findings, rather than the underlying, check-the-box summary conclusions" and any error in omitting Plaintiff's moderate limitation in the ability to respond to change was harmless.

Moreover, the challenged limitation is moderate, not disabling. A moderate limitation means that an individual is still able to function satisfactorily in the area of the limitation. See Strother v. Commissioner of Social Sec., 2009 WL 3157472, * 7 (E.D.Cal., Sept. 28, 2009) (noting that the vocational expert and ALJ agreed that a moderate limitation means "difficulties but able to perform"); see also Hanson v. Astrue, 2009 WL 2984051, * 7 (C.D.Cal., Sept. 16, 2009) (noting

---

[6]Simple repetitive tasks are consistent with unskilled work, the limitation used by the ALJ in the instant matter. See Lopez v. Astrue, 2011 WL 3206958, *8 (N.D.Cal., July 27, 2011) (stating that "a limitation to simple, routine, repetitive work is not inconsistent with the ability to perform unskilled work"); Cha Yang v. Astrue, 2010 WL 3768122, *14 (E.D.Cal., Sept. 22, 2010) (stating that "the ability to perform simple, repetitive tasks is consistent with unskilled work); and Orucevic v. Astrue, 2008 WL 4621420, *7 (W.D.Wash.,Oct. 16, 2008) (finding no error in the ALJ's conclusion that Plaintiff could perform unskilled work because of her limitation to simple, repetitive tasks and noting that the definition of unskilled work [20 C.F.R. § 416.968(a)] describes repetitive tasks as the primary work duty).

that the ALJ found that a moderate limitation in any area means the individual is still able to function satisfactorily in that area).[7] Given the fact that Plaintiff can still respond appropriately to changes in the work setting at a satisfactory level, omitting that limitation from the hypothetical presented to the VE was inconsequential to the ALJ's ultimate nondisability determination. Accordingly, the Court finds that if the ALJ did err by failing to include the challenged moderate limitation, the error was harmless.

## CONCLUSION

For the reasons set forth above, this Court finds that the ALJ did not err in omitting the adaptation limitation from the hypothetical posed to the VE. Alternatively, if the ALJ did err, the error was harmless. Accordingly, this Court **RECOMMENDS** that Defendant's cross-motion for summary judgment be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties **no later than March 30, 2012.** The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than April 13, 2012.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir.1991).

**IT IS SO ORDERED.**

DATED: March 15, 2012

BARBARA L. MAJOR
United States Magistrate Judge

---

[7] see also Serna v. Astrue, 2008 WL 5179033, *3 (C.D.Cal. Dec.9, 2008) (sating that Social Security regulations do not provide standard definition of "moderate"; noting that Eighth Circuit upheld ALJ's finding that claimant who had moderate limitation in ability to respond appropriately to work pressures in usual work setting would still be able satisfactorily to function in area) (citing LaCroix v. Barnhart, 465 F.3d 881, 888 (8th Cir.2006)); and Arriola, 2008 WL 4926961 at *4 (noting that ALJ's definition of the term "moderate" was consistent with 2006 edition of SSA Form HA-1152, which defines moderate limitation as follows: "There is more than a slight limitation in this area but the individual is still able to function satisfactorily.").